UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

PHILIP COLASUONNO,

                       Petitioner,

     -against-

UNITED STATES OF AMERICA,

                      Respondent.

-------------------------------------------------------x

**ORDER DENYING MOTION
TO VACATE, SET ASIDE, OR
CORRECT SENTENCE**

08 Civ. 6549 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

On November 2, 2006, Petitioner Philip Colasuonno was convicted of two bank

fraud charges following a jury trial. On June 18, 2007, Petitioner pleaded guilty to two tax fraud

charges. On July 19, 2007, after considering Petitioner's serious health problems, which are

described below, I sentenced Petitioner (1) on the bank fraud charges and the first tax fraud

charge, to time served plus five years of supervised release; (2) on the second tax fraud charge, to

five years of probation including forty-six months of home confinement, to run concurrently with

the term of supervised release; and (3) to restitution of $781,467 of unpaid taxes. Petitioner,

proceeding pro se, now moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his

sentence. For the reasons discussed below, I deny the motion.

On October 25, 2005, a grand jury returned an indictment charging Petitioner and

his brother, Dominick Colasuonno, with bank fraud and conspiracy to commit bank fraud. The

indictment alleged that the brothers had defrauded JPMorgan Chase Bank ("Chase") by

misreporting the value of fixed assets owned by their company, Prima Check Cashing, Inc.

("Prima"). Trial was scheduled for October 10, 2006. On September 11, 2006, the grand jury

returned a superseding indictment that contained the same two counts, but which added a second

-1-

theory, that the brothers had defrauded Chase by inflating Prima's bank balance and failing to inform Chase that the balance did not reflect Prima's true assets, effectively using the account continuously in a check-kiting scheme to move cash between Prima and American Armored Car, Ltd. ("AAC," another company owned by the brothers), from and to customers of that company. The parties agreed not to change the trial date, and the Government promptly provided the defendants with the little additional discovery implicated by the second theory. After a sixteen-day trial, a jury found Petitioner guilty on both counts; it found Dominick Colasuonno guilty of bank fraud, but acquitted him of conspiracy to commit bank fraud.

On June 18, 2007, Petitioner and Dominick Colasuonno pleaded guilty to two tax fraud charges, conspiracy to defraud the United States by filing false tax returns, and aiding and abetting the preparation of false tax returns. These charges were unrelated to the bank fraud charges, and involved paying overtime wages in cash to AAC employees to avoid payroll taxes. In his plea agreement, Petitioner agreed to pay past taxes due to the Internal Revenue Service ("IRS"), and agreed not to file an appeal or a motion pursuant to 28 U.S.C. § 2255 if he received a sentence at or below the Guidelines range of forty-six to fifty-seven months. Gov't Exh. D.

On July 19, 2007, I sentenced Petitioner and Dominick Colasuonno for both the bank fraud convictions and the tax fraud convictions. Dominick Colasuonno received a sentence of forty months of imprisonment, followed by three years of supervised release, and restitution to the IRS of $781,467, jointly and severally with Petitioner. Petitioner, who suffered from various health problems including a serious heart condition and a heart attack which I witnessed in court, received a sentence equivalent to the sentence I gave to his brother, but in home confinement rather than jail. I did that because it was clear to me, and so represented by his counsel, that his

-2-

heart condition would take his life in jail. Accordingly, I sentenced Petitioner to forty-six months of home confinement and restitution to the IRS of $781,467. I did that, technically, by sentencing him to five years of supervised release, and, concurrently, under the second tax fraud count, to five years of probation, including the forty-six months of home confinement. The sentence of probation was unavailable on the bank fraud counts. I explained all this at sentencing, and Petitioner was informed of his constitutional right to appeal. See Gov't Exh. G at 95-98. However, Petitioner did not file a notice of appeal.

Since sentencing, Petitioner has failed to comply with the restitution order, which required him to agree with the IRS on a schedule for repayment. I entered an order creating such a schedule on December 12, 2008. Petitioner appealed my subsequent holding that disability payments should be included in his income for purposes of calculating his monthly restitution obligation, but later withdrew that appeal. In addition, on July 23, 2008, Petitioner filed this motion pursuant to § 2255. He filed an amended motion on October 3, 2008.

"[A] motion under § 2255 is not a substitute for direct appeal." Sapia v. United States, 433 F.3d 212, 217 (2d Cir. 2005). If a defendant does not appeal his conviction and sentence, he is procedurally barred from raising issues on a § 2255 motion that he could have raised on a direct appeal, unless one of two exceptions applies. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted); see Sapia, 433 F.3d at 217.

A petitioner may show cause by demonstrating constitutionally ineffective

-3-

assistance of counsel, or some other "external objective factor" that prevented him from raising

the issue on direct appeal. Akwuba v. United States, No. 01 Civ. 3057 (SWK) (FM), 2007 U.S.

Dist. LEXIS 44938, at *12 (S.D.N.Y. June 20, 2007); see Edwards v. Carpenter, 529 U.S. 446,

451 (2000) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). "Attorney ignorance or

inadvertence does not constitute cause." United States v. Viertel, No. 08 Civ. 7512 (JGK), 2009

U.S. Dist. LEXIS 193, at *15 (S.D.N.Y. Jan. 5, 2009). A petitioner may show prejudice by

demonstrating not only that "the errors at his trial created a possibility of prejudice, but that they

worked to his actual and substantial disadvantage, infecting his entire trial with error of

constitutional dimensions." United States v. Frady, 456 U.S. 152, 171 (1982). Alternatively, to

show actual innocence instead of cause and prejudice, a petitioner must demonstrate that the

constitutional errors "probably resulted in the conviction of one who is actually innocent," as "it

is more likely than not that no reasonable juror would have convicted him." Bousley, 523 U.S. at

623 (quotation marks and citations omitted).

      Petitioner asserts seven claims in his amended § 2255 motion. First, he alleges

that the superseding indictment, which added the second bank fraud theory, prejudiced his trial

defense because it was returned only one month before trial. Second, he alleges that the

Government withheld evidence during his trial, specifically documents relied on by forensic

accountants who testified about Prima's actual assets. Third, he alleges that the Government

used "fear tactics" by offering immunity to certain witnesses to procure their false testimony at

trial. Fourth, he alleges that Chase untimely filed a suspicious activity report with the

Department of the Treasury concerning Prima's fraud, and was not entitled to safe harbor from

civil liability. Fifth, he disputes the persuasiveness of the evidence introduced at trial to prove

the charge that Petitioner defrauded Chase by inflating the fixed assets of Prima. Sixth, he
alleges that his plea agreement as to the tax fraud charges was invalid, and that the advice of his
counsel to sign it constituted inadequate legal representation. Seventh, he alleges that his counsel
rendered ineffective assistance by failing to obtain a mistrial after a juror made a prejudicial
statement in court.

    The first through fifth claims, which relate to alleged defects at his trial on bank
fraud charges, are procedurally barred because Petitioner did not appeal his bank fraud
conviction and sentence. See Sapia, 433 F.3d at 217. Petitioner does not dispute that he was
informed of his constitutional right to appeal, and that he did not file a notice of appeal. See
Gov't Exh. G at 98. Rather, Petitioner argues that health problems prevented him from filing a
notice of appeal, as doctors had advised him that appellate proceedings or another trial would
create dangerous amounts of stress. Petitioner suffered and continues to suffer from serious
medical problems, including a heart attack a few months before his guilty plea and sentencing.
However, Petitioner does not explain how these problems prevented him from instructing his
counsel to file a notice of appeal, nor does he explain why they do not likewise preclude him
from pursuing habeas corpus relief pro se. He does not claim to have been incapacitated, but
rather to have chosen in light of his health not to seek direct review. Therefore, his health
problems do not present an external force, beyond his control, sufficient to constitute cause. See
Edwards, 529 U.S. at 451; Carrier, 477 U.S. at 488.

    Petitioner also argues that he received ineffective assistance of counsel. The
procedural bar which applies to claims not raised on direct review, see Bousley, 523 U.S. at 622,
does not apply to claims of ineffective assistance of counsel, Massaro v. United States, 538 U.S.

500, 504-05 (2003).  In addition, as described above, a claim of ineffective assistance may

establish cause sufficient—with a showing of prejudice—to overcome that procedural bar with

respect to other constitutional claims.  See Edwards, 529 U.S. at 451.  However, Petitioner's

claim does not satisfy the test of Strickland v. Washington, 466 U.S. 668 (1984), and so fails on

its merits and also does not provide cause for Petitioner's failure to file an appeal.  Under

Strickland, a defendant alleging ineffective assistance of counsel must show that (1) counsel

made errors in the representation so serious as to be objectively unreasonable; and (2) the result

of the proceeding would likely have been different in the absence of counsel's errors.  Id. at 687;

see Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Petitioner must overcome a strong presumption

that counsel did render adequate assistance and did exercise reasonable professional judgment.

Strickland, 466 U.S. at 688.

      Notably, Petitioner does not claim ineffective assistance with respect to his

decision not to appeal his conviction and sentence, and so may not cite any such defect as cause

for failing to pursue direct review.  Rather, Petitioner describes the "major and most important"

example of ineffective assistance as his seventh claim, the fact that his trial counsel did not

"insist that the court declare a mis-trial when a Juror accused [Petitioner] of being a member of

organized crime."  Reply Mem. 22.  However, the record reveals that the juror's statement was

made at sidebar, not in open court, that counsel for Petitioner timely objected to the juror, and

that I granted his objection and dismissed the juror.  Trial Transcript, Oct. 10, 2006 (Voir Dire),

at 37-40.  Petitioner does not explain why his counsel was neglectful in not also moving for a

mistrial, or why his decision was an objectively unreasonable exercise of professional judgment.

The juror made her comment only at sidebar and was dismissed.  Petitioner makes no effort to

show any likelihood that I would have granted a mistrial, or how the decision affected the outcome of the trial. Petitioner's other references to alleged ineffective assistance at his trial, spread throughout his motion, are conclusory, and do not identify specific failures, how they deviated from objectively reasonable representation, and why the outcome would have differed but for these failures. In fact, Petitioner's counsel mounted a vigorous, sophisticated defense of Petitioner in a case involving complex financial fraud. For these reasons, Petitioner's seventh claim fails.

Petitioner's only attempt to excuse his procedural default on grounds of "actual innocence," see Bousley, 523 U.S. at 622, is a paragraph in which he refers to the dismissed juror's statement discussed above, and alleges coercion by the Government causing its witnesses to give false testimony. Reply Mem. 20. However, Petitioner does not say what was false, and he bears the burden so to show and to show as well that these alleged constitutional violations "probably resulted" in his erroneous conviction. Dretke v. Kelley, 541 U.S. 386, 393 (2004). He must offer "new reliable evidence" that he was not able to present at trial, and he fails to do that. See Schlup v. Delo, 513 U.S. 298, 327 (1995). Petitioner's arguments and evidence do not link the alleged errors to the outcome of his trial, and do not establish his innocence in any affirmative way.

Petitioner's sixth claim, that the plea agreement as to the tax fraud charges was invalid, is waived. In his plea agreement, Petitioner waived his right to collaterally attack a sentence within or below the Guidelines range. The sentence that he received falls well below that range. Petitioner now claims that he was not in a clear state of mind when he pleaded guilty, but, in his colloquy with the Court, Petitioner affirmed that he was of clear mind, that he was

-7-

satisfied with the services of his counsel, and that he understood the plea agreement, in particular

its provision restricting his right to appeal or to seek other post-conviction remedies if he

received a sentence within or below the Guidelines range. See Gov't Exh. F at 9-15. Petitioner

repeatedly states, without elaboration, that the plea agreement was invalid, and that his counsel

should not have advised or allowed him to sign it. However, where, as here, the record reveals a

knowing and voluntary plea, and the ineffective assistance claim has no apparent merit, his

waiver stands. If I were to do otherwise and allow a collateral attack, I "would 'render the plea

bargaining process and the resulting agreement meaningless.'" United States v. Monzon, 359

F.3d 110, 118-19 (2d Cir. 2004) (quoting United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d

Cir. 1993)).

Accordingly, Petitioner's motion is denied in its entirety. I decline to issue a

certificate of appealability, as there has been no substantial showing of the denial of a

constitutional right. See 28 U.S.C. § 2253; Lozada v. United States, 107 F.3d 1011, 1016-17 (2d

Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259-60 (2d Cir.

1997).

The Clerk shall mark the case as closed.

SO ORDERED.

Dated:        August 18, 2009
              New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

-8-